IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

                              Plaintiff

v.

CHUCK A GROFF,

                              Defendant.

REPORT AND
RECOMMENDATION

10-cr-50-wmc

_____

## REPORT

A federal grand jury has charged defendant Chuck A. Groff in a four-count indictment with crimes related to manufacturing methamphetamine. Lincoln County sheriff's deputies discovered evidence against Groff while executing a state search warrant for his residence. Before the court is Groff's motion to quash the warrant and suppress evidence. *See* dkt. 12. For the reasons stated below, I am recommending that the court deny Groff's motion.

## Facts

On November 8, 2010, Sergeant Investigator Chad Collinsworth of the Lincoln County Sheriff's Department submitted a search warrant application to the state circuit court, seeking to search for evidence of methamphetamine cooking and distribution at Chuck A. Groff's residence at N1325 Tannery Road in Lincoln County. The affidavit is attached to Groff's opening brief (dkt. 12) and speaks for itself.[1] In its probable cause section, the affidavit provides a detailed report from an anonymous concerned citizen (the informant), information corroborating parts of the informant's story, information about pseudoephedrine purchases, Sgt.

---

[1] Groff asked this court to modify the Sgt. Collinsworth's affidavit pursuant to *Franks v. Delaware*, 438 U.S.154 (1978), but after hearing from both sides I found that Groff had not made the substantial preliminary showing that would entitle him to a *Franks* hearing. *See* dkt. 14.

Collinsworth's report of what he saw and heard at the Groffs' apartment, and criminal histories for Groff and his wife.

According to Investigator Collinsworth's affidavit, Groff was convicted in 2001 of possession with intent to deliver a small amount of cocaine and in 2003 of delivering a small amount of methamphetamine, with a charge of maintaining a drug house read in. Groff's wife Kathy was convicted in 2002 of possessing THC. Investigators were aware of 15 purchases of Sudafed 24 Hour by Groff between November 2008 and June 2009, with four purchases on one day and two purchases on each of three separate days. Investigators were aware of 10 purchases of Sudafed 24 Hour, by Groff's wife, including three days where she made two separate purchases. Three observed associates of the Groffs also made Sudafed 24 Hour purchases: Jake Jones, 10 times in seven months ending September 21 2009, including four times on one day and twice in one day on two occasions; Jacob Stolz, five times in 19 days in July 2009, including twice in one day; and Kristin Stops, 8 times in three months ending September 21, 2009, including twice in one day on two occasions. On November 8, 2009, Jones was out on bond on a state charge of manufacturing/delivering amphetamine.

On September 24, 2009, Sgt. Collinsworth had visited Groff's residence to assist a social services officer investigate a report of child neglect. In the kitchen he saw a glass-faced industrial style respirator; cooking methamphetamine generates noxious fumes. In the upstairs family room Sgt. Collinsworth saw a propane torch that could be used to ingest methamphetamine with pipes or foillies.

On October 27, 2009, (about two weeks before submission of the warrant affidavit), the informant provided information about the Groffs that took seven paragraphs of the warrant

affidavit to relate. The informant described herself as a former meth user who had seen the Groffs use methamphetamine in their home at least 20 times with foillies. The informant reported that Kathy Groff hid methamphetamine on her person in her bra. The informant knew how meth was cooked and knew what chemicals were used. The informant stated that she knew the Groffs were manufacturing methamphetamine with help from Paully Rassmussen. They cooked meth in the vacant apartments, in the garage, in the poleshed and outside on the property. The Groffs had asked the informant to buy Sudafed 24 hour for them and had offered to pay her $20 per box. The informant was present on separate occasions when two or three women brought cold tablets to the apartment and gave them to Groff and Rasmussen. The informant had seen yellow cans of Prestone starting fluid at Groff's residence that had been used to cook meth, and had seen Kathy Groff burn these cans in a barrel and then throw them into the woods. The informant claimed that a tank of anhydrous ammonia was hidden in the woods behind the residence. The informant had seen two young men and a young woman at the residence and described their silver car. Local police had seen a silver Pontiac at Groff's residence five times; it was registered to Kristin Stops; police stops of this car revealed Stops, Jones and Stolz to be in it. The informant stated that she had been stopping by the residence out of concern for the Groff children, bringing them food and bringing gas for the residence generator (there was no electricity).

On November 6, 2010, a deputy saw a burn barrel in the yard of the Groff residence; near it were two Prestone aerosol cans, one half-full, the other punctured and empty.

ANALYSIS

"Suppression of evidence . . . has always been our lasts resort, not our first impulse."

*Hudson v. Michigan,* 547 U.S. 586, 591 (2006).

Groff seeks to quash the search warrant issued for his residence and to suppress all evidence seized during its execution, arguing that the warrant lacked probable cause. His three main points is that the informant is of unknown reliability, there is a staleness problem, and the affiant misled the issuing court with misleading information and material omissions.

At a June 1, 2010 telephonic hearing, I heard Groff's proffer in support of the last point; I found that he had not made the requisite substantial showing of a material misstatement or omission that would require either a *Franks* hearing or revision of the affidavit.[2] Many of Groff's characterizations of statements as vague or misleading are based on his interpretation of those statements, an exegetical process that was available to the reviewing court at the time it issued the warrant. Groff also argues that it was a material omission for Sgt. Collinsworth to exclude the fact that Groff did auto repair work on the premises and maintained the apartment building. But, as observed by the government, these facts were immaterial in light of *where* the respirator, propane burner and Prestone cans were found. In any event, given the unusual locations of these items within the residence, this court could not find that the omission of Groff's asserted legitimate employment was reckless or intentional.[3]

---

[2] Although the telephonic hearing was recorded, neither side has ordered a transcription.

[3] In his reply brief, Groff supplements his explanations as to the "self-contained breathing aparatus," the propane torch in the "kitchen", whether the informant had an axe to grind, and the Prestone cans, among other things, and renews his request for a *Franks* hearing so as to put his version of events into the record before the court rules on the validity of the search warrant. A *Franks* hearing is not like a civil

Having failed to convince this court that there is a *Franks* problem with Sgt. Collinsworth's affidavit, Groff argues, as he must, that the warrant was so deficient that the deputies could not rely on it in good faith. *See United States v. Billian*, 600 F.3d 791, 793 (7th Cir. 2010) (the good faith doctrine of *United States v. Leon*, 468 U.S. 897 (1984) cannot salvage a warrant tainted by perjury or recklessly false statements).

Groff's points about the informant's unknown pedigree and about the unknown time frame of her observations are well taken up to a point, but only up to a point. As the Supreme Court noted fifty years ago in *Brinegar v. United States*, 338 U.S. 160 (1949),

> In dealing with probable cause, . . . as the very name implies, we are dealing with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.

*Id.* at 175.

This is a low evidentiary threshold, requiring only a probability or a substantial chance of criminal activity, not an actual showing of such activity. *United States v. Roth*, 201 F.3d 888, 893 (7th Cir. 2000), *quoting Illinois v. Gates*, 462 U.S. 213, 244 (1983). An affidavit submitted in support of a search warrant application will be sufficient if, based on the totality of circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. *United States v. Dismuke*, 593 F.3d 582,

---

discovery deposition where the parties get to explore factual details and nuances with witnesses in an attempt to create a chart of alleged contradictions and purported gaps and inconsistencies. This is the death of a thousand cuts that lawyers may inflict in a patent lawsuit, but it is not what the Court envisioned or allowed in *Franks*. The gestalt of the search warrant affidavit is clear and insufficiently impeached by Groff's suggested edits.

586 (7th Cir. 2010). Groff's divide-and-conquer approach to the search warrant affidavit– which he disavows–contravenes the longstanding rule that courts analyze probable based on the totality of circumstances. *United States v. Caldwell*, 423 F.3d 754, 760-61 (7th Cir. 2005).

When the affidavit relies on informant information, factors relevant to determining the informant's reliability and veracity include the degree of police corroboration of the informant's information; the extent to which the information is based on the informant's personal observations; the amount of detail provided by the informant; the interval of time between the events reported and the warrant application; whether the informant appeared before the issuing judge. A deficiency in one area may be compensated for by a strong showing in another or by some other indication of reliability. Statements by an informant of unknown reliability may supply probable cause if, under the totality of circumstances, a reasonable person might consider the statements worthy of credence; in this situation, the extent to which the police have corroborated the informant's information is key. *Id.* at 586-87. Similarly, while the recency of information if one factor bearing on the question of probable cause, there is no bright line for when information is stale. *United States v. Pappas*, 592 F.3d 799, 803 (7th Cir. 2010). Further, the passage of time is less critical when the affidavit refers to facts indicating ongoing criminal activity. *United States v. Watzman*, 486 F.3d 1004, 1008 (7th Cir. 2007); *United States v. Harris*, 464 F.3d 733, 739 (7th Cir. 2006).

As usual, in this case the informant did not appear before the state judge, so that factor drops from consideration. The informant has no track record and it is unclear from the affidavit when she made most of her observations. But the informant provided a firsthand, richly detailed and vivid account of family life, stark living conditions and ongoing meth cooking and smoking

in the Groff household. The informant's reports of bringing food to the children is tangentially corroborated by the recent social service visits to the home. Her report of encountering at the Groff residence a bevy of young Sudafed providers is corroborated by the deputies' identification of these people and their highly suspicious cold-tablet buying habits. The ongoing nature of some of these purchases suggested ongoing meth cooking, which not only corroborates the informant's account in general but also offsets the informant's failure to put a time frame on her observations. The informant's reports of repeated meth cooking and smoking is corroborated in part by the observation in September of a respirator in the kitchen, a propane torch upstairs, and the observation in November of Prestone cans near the fire barrel. Considering all of the evidence as a whole demonstrates that there was probable cause to support the search warrant for Groff's residence.

  Even if this court were to conclude that Sgt. Collinsworth's affidavit did not establish probable cause for the search, the evidence obtained would not be suppressed if the deputies relied on the warrant in good faith. The decision to seek a warrant is prima facie evidence that Sgt. Collinsworth was acting in good faith, and this presumption is not overcome unless the affidavit was so lacking in indicia of probable cause as to render the deputies' belief in its existence entirely unreasonable, or if the state court judge wholly abandoned his neutral role and served merely as a rubber stamp for the police. *Dismuke*, 593 F.3d at 586; *see also United States v. Elst*, 579 F.3d 740, 744 (7th Cir. 2009). The synopsis of the warrant affidavit provided above demonstrates first, that this was no bare bones, see-if-it-flies warrant application by Sgt. Collinsworth, and second, that the issuing judge cannot be deemed to have rubber-stamped a patently deficient application. Accordingly, even if probable cause were lacking–and it's not–

the good faith doctrine would prevent suppression of the evidence. This comports with the Supreme Court's recent retrenchment of the exclusionary rule, which now is reserved for cases of deliberate, reckless or grossly negligent conduct by law enforcement officers. *See Herring v. United States*, ___ U.S. ___, 126 S.Ct. 695, 702 (2009). There was none of that here.

## RECOMMENDATION

Pursuant to 42 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court deny defendant Chuck A. Groff's motion to suppress evidence.

Entered this 13th day of July 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge